IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SIRIUS FEDERAL, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-1988 |
| KATE YOASH, et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Kate Yoash, Landon Fielder, and CTG Federal, LLC's (collectively, "CTG Defendants") Motions to Dismiss. (ECF Nos. 45, 46). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motions.

### I.    BACKGROUND[1]

**A.    Factual Background**

Sirius is one of several contractors that compete for a limited number of federal government IT contracts. (Compl. ¶ 13, ECF No. 1). Contracts are obtained through a highly regulated bidding process often organized through System Integrators that have contracting authority for major government procurement programs. (Id.). Knowledge of the bidding practices and procurement personnel of System Integrators is key and close contacts with key players are crucial. (Id.). As a result, Sirius dedicates substantial

---

[1] Unless otherwise noted, the Court takes the following facts from Sirius's Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

resources to developing goodwill, rapport, and trust with clients, System Integrators, and referral sources. (Id. ¶ 15). Booz Allen Hamilton ("BAH"), Naval Information Warfare Center ("NIWC") are long-time Sirius customers who generate millions in annual sales. (Id. ¶¶ 29–30). Cisco Systems, Inc. ("Cisco") is a longstanding Sirius supplier that provides a majority of Sirius's IT products and services. (Id. ¶ 31).

In June 2014, Sirius hired Kate Yoash, who did not have any prior experience in government contracting or the defense industry, as a Sales Associate. (Id. ¶¶ 17, 18). Yoash's job responsibilities included directly interacting with suppliers, contractors, and government entities to develop sales. (Id. ¶ 19). She interacted with many customers, including, but not limited to, BAH, NIWC, and Cisco. (Id.)

In May 2019, Sirius hired Landon Fielder as a "Senior Technical Consultant/Solutions Architect, Collaboration." (Id. ¶ 20). Fielder had prior relevant experience when working at Point Rock Solutions for three years. (Id. ¶ 21). Fielder's role included designing technical solutions to respond to federal government requests for proposals, meeting government customers' technical needs, and supporting Sirius's sales teams. (Id. ¶ 20). Fielder was later promoted to an account manager sales position which included selling directly to several customers, including BAH, NIWC, and Cisco. (Id. ¶ 22).

Yoash and Fielder (together, the "Employee Defendants") both signed, as a condition of their employment, Employment Agreements which include Assignment of Inventions, Non-Disclosure, and Non-Solicitation Agreements with Sirius. (Id. ¶ 23; Yoash

Emp. Agreement, ECF 1-1; Fielder Emp. Agreement, ECF 1-2). The Non-Solicitation Provision states:

> <u>Restrictive Covenant</u>. As a material inducement to Company to enter into this Agreement, I covenant and agree that without the Company's prior written consent, during my employment with Company and for a period of one (1) year following the termination of my employment, whether such termination be with or without cause, I shall not (1) engage during such period, directly or indirectly, voluntarily or involuntarily, as principal, agent, officer, employee or otherwise, anywhere in the United States, in any actions to divert or take away any customer or supplier of Company; seek to reduce the amount of business performed or engaged in by the Company with any customer or supplier; contact, solicit, or conduct business with any existing customer of the Company or any prospect, potential customer, or contract opportunity pursued by the Company within one (1) year immediately preceding my termination of employment or disclosed to me during my employment with the Company [and with whom I had business dealings or personal contact]; or (2) use directly or indirectly, the above described Confidential Information for any purpose other than for the benefit of the Company.

(Compl. ¶ 24; Yoash Emp. Agreement ¶ 7.1; Fielder Emp. Agreement ¶ 7.1). The Non-Solicitation Provisions included in the Employment Agreements differ only in that the bracketed statement above is not included in Yoash's Employment Agreement. (Yoash Emp. Agreement ¶ 7.1). Employee Defendants also signed acknowledgements of the validity of the Non-Solicitation Provision. (<u>Id.</u> ¶ 25).

In February 2022, Employee Defendants left Sirius to join CTG. (<u>Id.</u> ¶ 32). Concerned with the similarities of the duties and position that Employee Defendants held at Sirius, Sirius sent letters to CTG Defendants outlining in detail Employee Defendants' contractual post-employment obligations. (<u>Id.</u> ¶¶ 33–34). CTG Defendants did not respond. (<u>Id.</u> ¶ 40).

3

On July 29, 2022, Sirius learned through an email inadvertently sent by Cisco that Employee Defendants, on behalf of CTG, submitted a bid to provide $659,947.97 in products manufactured by Cisco to BAH and NIWC. (Id. ¶ 44).

**B.    Procedural History**

Sirius filed the present action on August 10, 2022, against Kate Yoash, Landon Fielder, and CTG Federal, LLC. (ECF No. 1). In the five-count Complaint, Sirius alleges: entitlement to a declaratory judgment affirming and enforcing Sirius's rights under the Employment Agreements' Non-Solicitation Provision (Count I); breach of contract for violating the Employee Agreements' Non-Solicitation Provision against Employee Defendants (Count II); intentional interference with Employee Defendants Employment Agreements against CTG (Count III); engagement in unfair competition by violating the Employee Agreements' Non-Solicitation Provision against all CTG Defendants (Count IV); civil conspiracy by agreeing to ignore the Restrictive Covenants within the Employment Agreements against all Defendants (Count V). (See id. ¶¶ 50–82). Sirius seeks a temporary restraining order or preliminary injunction, damages, and attorney's fees and costs. (Id. at 20).

CTG Defendants now move to dismiss all counts against it for failure to state a claim upon which relief may be granted. (ECF Nos. 45, 46). Sirius filed an Opposition on September 15, 2022. (ECF No. 53). CTG Defendants filed their Replies on September 29, 2022. (ECF Nos. 54, 55).

## II.    DISCUSSION

**A.    Standard of Review**

4

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)).  A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events,

5

United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.	Analysis**

    **1.	Declaratory Judgment Claim**

CTG Defendants contend that Sirius is not entitled to a declaratory judgment because each of the underlying substantive claims are barred. Additionally, CTG Defendants assert the claim should be treated as abandoned because Sirius did not address the issue in their Opposition. The Court agrees Sirius fails to state a claim for declaratory judgment and will dismiss Sirius's declaratory judgment claim.

Sirius alleges that it is entitled to a declaratory judgment affirming and enforcing its rights under the Employment Agreements' Non-Solicitation Provision. To state a claim for declaratory judgment, a plaintiff must meet three conditions:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction.

McNulty v. Casero, 479 F.Supp.3d 200, 208 (D.Md. 2020) (quoting Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004)). Evaluation of the first element is a fact-specific inquiry. Hogs & Heroes Found., Inc. v. Heroes, Inc., 202 F.Supp.3d 490, 495 (D.Md. 2016). The Fourth Circuit held that "a district court must have 'good reason' to decline to entertain a declaratory judgment action." McNulty, 479 F.Supp.3d at 209 (quoting Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994)). Additionally, the Declaratory Judgment Act is remedial only and does not create

6

any substantive rights. 28 U.S.C. § 2201; CGM, LLC, 664 F.3d at 55–56; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950).

Here, the "actual controversy" element is not met. There is ongoing litigation between Sirius and CTG Defendants as to whether the Restrictive Covenants are enforceable, whether CTG tortiously interfered with the Restrictive Covenants, whether CTG Defendants engaged in unfair competition, and whether CTG Defendants formed a civil conspiracy. However, the fact that the parties continue to argue about the enforceability of a Restrictive Covenant does not itself warrant declaratory relief. Waypoint Mgmt. Consulting, LLC v. Krone, No. ELH-19-2988, 2022 WL 2528465, at *25 (D.Md. July 6, 2022); see Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F.Supp.2d 485, 493–94 (E.D.Va. 2002). The Court should rule on the merits in a declaratory judgment action where declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Volvo Constr. Equip., 386 F.3d at 594 (quoting Aetna Cas & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). Here, the Restrictive Covenant was valid only for a term of one year, commencing with Employee Defendants' departure from Sirius. It is undisputed that Employee Defendants resigned from their respective positions in February 2022. Further, each of the underlying claims in the Complaint will be dismissed. Thus, more than one year has passed and the utility of a declaratory judgment has expired.

Hence, the Court will dismiss Sirius's declaratory judgment claim for failure to allege an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

### 2. Breach of Contract Claim

In brief, the Court concludes that it will dismiss Sirius's breach of contract claim against CTG Defendants.

In Maryland, a restrictive covenant must meet four requirements: "(1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy." Seneca One Fin., Inc. v. Bloshuk, 214 F.Supp.3d 457, 461 (D.Md. 2016) (quoting Medispec, Ltd. v. Chouinard, 133 F.Supp.3d 771, 773–74 (D.Md. 2015)). "In assessing the reasonableness of scope and duration [of a non-compete clause], a 'determination must be made based on the scope of each particular covenant itself; and, if that is not too broad on its face, the facts and circumstances of each case must be examined.'" Medispec, Ltd., 133 F.Supp.3d at 774–75 (quoting Deutsche Post Glob. Mail, Ltd. v. Conrad, 116 F. App'x 435, 438 (4th Cir. 2004) ("DPGM II").

CTG Defendants assert that Sirius fails to state each of the four elements. The Court considers them in turn.

#### i. Legally Protected Interest

The Court recognizes that employers have a legally protected interest in "preventing departing employees from taking with them the customer goodwill they helped to create

for the employer." Seneca One, 214 F.Supp.3d at 461 (citing DPGM II, Ltd., 116 F. App'x at 437-38); Aerotek, Inc. v. Obercian, 377 F.Supp.3d 539, 547 (D.Md. 2019); Holloway v. Faw, Casson & Co., 572 A.2d 510, 515 (Md. 1990) ("Persons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers.").

Sirius maintains that its longstanding history of successfully cultivating and maintaining client relationships is essential to their success in the industry and that Employee Defendants personally worked with several key customers. Employee Defendants do not dispute that they serviced, solicited, and were in contact with various Sirius customers during their employment at Sirius.

Thus, the Court concludes Sirius has a legally protected interest in ensuring that Employee Defendants do not abuse the customer goodwill they established during their employment at Sirius.

### ii. Scope of the Restrictive Covenant

Next, in assessing the reasonableness of a particular restrictive covenant, the Court must first determine "the scope of each particular covenant itself." Seneca One, 214 F.Supp.3d at 461 (quoting Medispec, Ltd., 133 F.Supp.3d at 774–75). Then, if the covenant is not overbroad on its face, "the facts and circumstances of each case must be examined." Id. A restrictive covenant is overbroad if it is wider in scope, duration, or area than is reasonably necessary to protect the employer's legally protected interest. Id.; DPGM II, 116 F.App'x at 437. The Restrictive Covenant here is far wider in scope than is reasonably

necessary to protect the goodwill that Employee Defendants may have created with Sirius customers.

The Restrictive Covenant in the Employment Agreement states:

> As a material inducement to Company to enter into this Agreement, I covenant and agree that without the Company's prior written consent, during my employment with Company and for a period of one (1) year following the termination of my employment, whether such termination be with or without cause, I shall not (1) engage during such period, directly or indirectly, voluntarily or involuntarily, as principal, agent, officer, employee or otherwise, anywhere in the United States, in any actions to divert or take away any customer or supplier of Company; seek to reduce the amount of business performed or engaged in by the Company with any customer or supplier; contact, solicit, or conduct business with any existing customer of the Company or any prospect, potential customer, or contract opportunity pursued by the Company within one (1) year immediately preceding my termination of employment or disclosed to me during my employment with the Company [and with whom I had business dealings or personal contact]; or (2) use directly or indirectly, the above described Confidential Information for any purpose other than for the benefit of the Company.

(Compl. ¶ 24). It is important to note that Yoash's Restrictive Covenant did not include the bracketed language at the end of the first subsection that states "and with whom I had business dealings or personal contact." (Yoash Emp. Agreement ¶ 7.1, ECF No. 1-1). Sirius defines "Company" to include Sirius's subsidiaries, parent companies and affiliates. (Id. ¶ 13; Fielder Emp. Agreement ¶ 13, ECF No. 1-2).

The Restrictive Covenant encompassing the entire United States does not make it per se unenforceable where, as here, Sirius participates in a national market. See Medispec, Ltd., 133 F.Supp.3d at 775; Intelus Corp. v. Barton, 7 F.Supp.2d 635, 641 (D.Md. 1998). Taking Sirius's allegation that Employee Defendants worked nationally as true, the geographic scope is reasonable. The duration of one year is also reasonable. MCS Services,

10

Inc. v. Jones, No. WMN-10-1042, 2010 WL 3895380, at *3 (D.Md. Oct. 1, 2010); Padco Advisors, Inc. v. Omdahl 179 F.Supp.2d 600, 606 (D.Md. 2002) (enforcing a two-year noncompetition restriction). However, the scope of the prohibited activity is significantly overbroad.

The activities prohibited by a restrictive covenant must be specifically targeted at activities that would jeopardize the goodwill the defendant created on behalf of his former company. Medispec, Ltd., 133 F.Supp.3d at 775; DPGM II, 116 F. App'x at 437; MCS Services, Inc., 2010 WL 3895380, at *4; Paul v. ImpactOffice LLC, No. TDC-16-2686, 2017 WL 2462492, at *5 (D.Md. June 6, 2017). "Courts have found restrictive covenants that bar the solicitation of prospective customers overbroad and unenforceable because prospective customers have not yet conducted business with the employer, and therefore the employee has not generated any goodwill with the customer on the employer's behalf." Aerotek, 377 F.Supp.3d at 550; see also Seneca One, 214 F.Supp.3d at 464; Bindagraphics, Inc. v. Fox Grp., Inc., 377 F.Supp.3d 565, 574–75 (D.Md. 2019).

In Paul v. ImpactOffice LLC, "the restriction on accepting business from Impact customers [was held to be] unreasonable because an employer's protectable interest is in 'preventing an employee from using the contacts established during employment . . . .'" 2017 WL 2462492, at *5. A bar on mere passive acceptance of unsolicited business prohibits activity that involved no use of prior customer relationships. Id. In DPGM II, the Court held that a restrictive covenant that prohibited the defendants from engaging "in any activity which may affect adversely the interests of the Company or any related Corporation and the business conducted by either of them" to be overbroad and

unenforceable. 116 F.App'x at 438. The Court reasoned that the language of the covenant, taken literally, would restrict the defendants from even using a competitor's mail service for any purpose, business or personal. Id. at 438–39. Here, the Restrictive Covenants bar any action "voluntary or involuntary" that "divert or take away any customer or supplier" of Sirius or that "seek to reduce the amount of business performed or engaged in by the Company with any customer or supplier." (Compl. ¶ 24). Like the language in DPGM II, taken literally, Employee Defendants could not engage in any activities, even unknowingly, that reduces the amount of business that Sirius is doing. This would also include passively accepting an unsolicited customer's business as in Paul. Thus, the language of the covenant goes beyond protecting the customer goodwill Employee Defendants created with Sirius customers because it involves no use of the relationships they created while at Sirius.

This Court did not dismiss Sirius's breach of contract claim in Sirius Federal, LLC v. Jelen, No. LKG-22-223, 2023 WL 22213929, at *10 (D.Md. Feb. 24, 2023) (holding a non-competition clause was not overbroad because it was narrowly tailored and limited to one year), which also dealt with an Employment Agreement. However, the present case is distinguishable from Jelen. The Employment Agreement in Jelen concerned confidentiality and differs from the language in the instant case. Id. Additionally, the clauses throughout the agreement are referred to as "non-competition clauses" rather than "non-solicitation clauses" as they are here. Id.

Plaintiffs argue that the scope of the covenants is limited to customers with whom Employee Defendants dealt while at Sirius. This is not the case. Yoash's Restrictive

12

Covenant is particularly problematic because it does not include the phrase "and with whom I had business dealings or personal contact." This means that the Restrictive Covenant applies to any customer of Sirius, the parent companies and affiliates even if Yoash had no knowledge they were a customer at all. If Yoash has no knowledge of them being a customer, certainly no customer goodwill was created. Further, the Restrictive Covenant includes "any prospect, potential customer, or contract opportunity pursued by the Company within one (1) year immediately preceding my termination of employment or disclosed to me during my employment with the Company." (Compl. ¶ 24). The Court made clear that prohibiting individuals from engaging with prospective or potential customers is not considered reasonably necessary to protect any goodwill the Employee Defendants created because customer goodwill has not yet been created.

In addition, there is no case law that supports the assertion that the acknowledgements within the Employment Agreements can make the Restrictive Covenant enforceable. The Court, therefore, concludes that the Non-Solicitation Provision of the Employment Agreements are overbroad, and therefore unenforceable.

Because this essential element has not been met, the Court need not address undue hardship or public policy. The Court will dismiss Sirius's breach of contract claim.

### 3. Intentional Interference Claim

CTG maintains that Sirius does not sufficiently state that CTG intentionally interfered with the Employee Defendants Employment Agreements because the Restrictive Covenants are unenforceable as a matter of law. Sirius further fails to allege any specific

facts showing that CTG intentionally induced or encouraged Employee Defendants to breach their Restrictive Covenants. The Court agrees.

Sirius alleges that CTG intentionally interfered with Employee Defendants Employment Agreements by inducing Employee Defendants to breach their Restrictive Covenants to help secure the BAH and NIWC contract. To state a claim for tortious interference with contract, Sirius must show: "(1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional interference with the contract; (4) breach of the contract by the third party; and (5) resulting damages to the plaintiff." Mansell v. Toys R Us, Inc., 673 F.Supp.2d 407, 415–16 (D.Md. 2009). A valid agreement that is "not illegal as in restraint of trade, or otherwise opposed to public policy" is prerequisite for stating a claim of tortious interference. Id. at 416 (quoting Fraidin v. Weitzman, 611 A.2d 1046, 1057 (Md.Ct.Spec.App. 1992)).

Here, the Court has concluded that the Restrictive Covenants are not valid agreements. The claim cannot survive missing this prerequisite. Thus, the Court will dismiss Sirius's complaint for failure to state a claim for intentional interferences.

**4.     Unfair Competition Claim**

The tort of unfair competition prohibits "damaging or jeopardizing another's business by fraud, deceit, trickery, or unfair methods of any sort." Balt. Bedding Corp. v. Moses, 34 A.2d 338, 342 (Md. 1943).

Here, CTG Defendants contend that Sirius fails to state a claim for unfair competition because Sirius's claims rely on the validity of the unenforceable Restrictive

Covenants. The Court agrees. Sirius argues that CTG Defendants engaged in unfair competition by stealing Sirius's customer goodwill and using it to solicit Sirius customers on CTG's behalf. However, a careful reading of the complaint shows that the complaint is devoid of facts to demonstrate that CTG Defendants engaged in fraud, deceit, trickery, or unfair methods to unfairly compete with Sirius.

The Court, therefore, will dismiss Sirius's unfair competition claim for failure to state a claim.

### 5. Conspiracy Claim

At bottom, the Court will dismiss Sirius's conspiracy claim against CTG Defendants.

To sufficiently plead a civil conspiracy, Sirius must allege: "1) a confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff." Lloyd v. Gen. Motors Corp., 916 A.2d 257, 284 (Md. 2007); Hoffman v. Stamper, 867 A.2d 276, 290 (Md. 2005). "Factual allegations that provide an indication of when and how the agreement was brokered and how each of the defendants specifically were parties to the agreement" are required. Chambers v. King Buick GMC, LLC, 43 F.Supp.3d 575, 611 (D.Md. 2014).

Here, CTG Defendants assert that a civil conspiracy claim cannot stand alone absent other tortious injury. Therefore, when the intentional interference and unfair competition claim fail, the civil conspiracy claim must fail also. CTG Defendants further argue that Sirius has not set forth any of the specific allegations required. The Court agrees. Sirius

alleges that despite knowing about the Restrictive Covenants, CTG agreed and conspired to solicit the same Sirius clients that Employee Defendants had worked with while at Sirius. However, a careful reading of the complaint makes clear that Sirius does not allege facts to show an agreement among Defendants to conspire to compete against Sirius.

The Court, therefore, will dismiss Sirius's civil conspiracy claim for failure to state a claim. Accordingly, the Court will grant CTG Defendants' Motions.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Kate Yoash, Landon Fielder, and CTG Federal, LLC's Motion to Dismiss for Failure to State a Claim (ECF Nos. 45, 46). A separate order follows.

Entered this 11th day of July, 2023.

/s/
George L. Russell, III
United States District Judge
